LISA ANN NOELL, Plaintiff v. RADOSLAV KOSANIN, VERNE C. LANIER, JR., VERNE C. LANIER, JR., M.D., F.A.C.S.—PLASTIC SURGERY CENTER, P.A. (FORMERLY KNOWN AS LANIER & RIEFKOHL PLASTIC SURGERY CENTER, P.A.), DOE ONE, DOE TWO AND DOE THREE, DEFENDANTS

No. 9414SC317

(Filed 6 June 1995)

1. **Physicians, Surgeons, and Other Health Care Professionals § 137 (NCI4th)— anesthesiologist—eyes not taped closed—injury to eye—summary judgment for defendant— improper**

The trial court erred by granting summary judgment for an anesthesiologist where plaintiff had a rhinoplasty and replacement of a chin implant; she suffered severe pain in her right eye following the surgery; it was determined that she had suffered erosion of the surface epithelium secondary to drying of the epithelial surface during her surgery; she continued to suffer periodic episodes of recurrent erosion syndrome which became less frequent but still occurred several times a month; her forecast of evidence included the affidavit of her mother and plaintiff's deposition, both relating that Dr. Lanier (the plastic surgeon) had told them that the eye had been improperly taped during surgery; and the response to a request for admissions and the deposition of the anesthesiologist in which the anesthesiologist indicated that the standard of care required the eyes to be taped shut during this surgery to prevent drying of the eye. Viewed in the light most favorable to plaintiff, the evidence establishes issues of fact as to whether the anesthesiologist breached the applicable standard of care and thereby proximately caused plaintiff's injury.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 256-258.**

2. **Physicians, Surgeons, and Other Health Care Professionals § 96 (NCI4th)— eye not taped by anesthesiologist—liability of surgeon**

The trial court erred in granting summary judgment for a plastic surgeon in a medical malpractice action arising from an anesthesiologist's failure to tape closed the patient's eye during surgery where this anesthesiologist had served as the primary anesthesiologist for this plastic surgeon since 1986; he had administered anesthesia to all of the plastic surgeon's patients

requiring general anesthesia beginning in 1989; the anesthesiologist would furnish the plastic surgeon with a list of times when he was available and the surgeon would schedule his surgeries accordingly; the surgeon's office would telephone the anesthesiologist with the schedule of cases for the following week; plaintiff testified that she chose the surgeon because she heard that he was the best; she first spoke to the anesthesiologist the day before the surgery when he called to explain the procedure to her; he had sent her a pamphlet explaining his background and reviewing general anesthesia procedures; the pamphlet stated that he worked jointly with the plastic surgeon; and the only bill plaintiff received was through the plastic surgeon's office, which included an anesthesia fee. These facts are sufficient to create a jury question as to whether plaintiff reasonably assumed that the plastic surgeon was in charge of her entire surgical procedure, including anesthesia care and recovery.

**Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 286, 287.**

Appeal by plaintiff from summary judgment entered 19 and 20 October 1993 by Judge J.B. Allen, Jr. in Durham County Superior Court. Heard in the Court of Appeals 6 April 1995.

*Law Offices of Grover C. McCain, Jr., by Grover C. McCain, Jr. and Kenneth B. Oettinger, for plaintiff-appellant.*

*Patterson, Dilthey, Clay & Bryson, L.L.P., by E.C. Bryson, Jr. and Mark E. Anderson, for defendant-appellee Radoslav Kosanin.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson and Kerry A. Shad, for defendants-appellees Verne C. Lanier, Jr. and Verne C. Lanier, Jr., M.D., F.A.C.S.—Plastic Surgery Center, P.A.*

WALKER, Judge.

On 24 August 1990, plaintiff was admitted to Lanier & Riefkohl Plastic Surgery Center, P.A., now known as Verne C. Lanier, M.D., F.A.C.S.—Plastic Surgery Center, P.A. (the Plastic Surgery Center), for secondary open rhinoplasty and removal and replacement of a chin implant. Defendant Verne C. Lanier, Jr., a plastic surgeon, per-

formed the surgery. Defendant Radoslav Kosanin, an anesthesiologist, administered anesthesia services to plaintiff.

At approximately 8:30 a.m., plaintiff was marked for surgery by Dr. Lanier and placed under general anesthesia by Dr. Kosanin. Plaintiff was then prepared for surgery by Dr. Kosanin and other operating room personnel. Surgery was completed at approximately 11:00 a.m., and plaintiff was taken to the recovery room. Upon awakening from surgery, plaintiff complained of a severe pain in her right eye. At approximately 5:30 p.m., Dr. Lanier came to the recovery room to examine plaintiff's stitches, and plaintiff informed him of this pain. Plaintiff was discharged at approximately 6:00 p.m. but continued to have pain in her right eye.

The next morning, plaintiff called Dr. Lanier and informed him that she was still experiencing severe pain in her right eye. Dr. Lanier arranged for plaintiff to be examined by Dr. J. Stuart McCracken, an ophthalmologist. Dr. McCracken examined plaintiff that morning and determined that plaintiff's right cornea had "an approximate 40 percent central erosion or defect of the surface epithelium." The pain persisted, and plaintiff saw Dr. McCracken daily from 26 August to 30 August. Dr. McCracken diagnosed plaintiff's eye injury as "an epithelial erosion secondary to drying out of the epithelial surface during her surgical procedure." After that time plaintiff continued to experience periodic episodes of recurrent erosion syndrome which became less frequent but still occurred several times a month.

On 22 May 1992 plaintiff filed suit, alleging that Drs. Kosanin and Lanier were negligent in failing to properly tape her eyes shut prior to surgery, which negligence proximately caused her injuries and damages. Plaintiff also alleged that Drs. Kosanin and Lanier were negligent under the doctrine of *res ipsa loquitur*. Defendants answered denying negligence and subsequently moved for summary judgment. Summary judgment was granted in favor of all defendants.

[1] We first address plaintiff's argument that summary judgment was improvidently granted in favor of Dr. Kosanin. In order to maintain an action for medical malpractice, a plaintiff must offer evidence to establish (1) the applicable standard of care; (2) breach of that standard; (3) proximate cause; and (4) damages. *Turner v. Duke University*, 325 N.C. 152, 162, 381 S.E.2d 706, 712 (1989). Causation is an inference of fact to be drawn from other facts and circumstances. *Id.*

In support of his motion for summary judgment, Dr. Kosanin presented the affidavit of Dr. Lloyd F. Redick, a board certified anesthesiologist. After reviewing plaintiff's medical records and the depositions of Drs. Kosanin and McCracken, Dr. Redick expressed the opinion that Dr. Kosanin's anesthetic management of plaintiff conformed to the applicable standard of practice of physicians with Dr. Kosanin's training and experience practicing anesthesiology in Durham in 1990. Dr. Redick further opined that the corneal abrasion plaintiff experienced could occur in the absence of any medical negligence.

Dr. Kosanin contends that this evidence demonstrates the lack of essential elements of plaintiff's claim (breach and proximate cause) and that plaintiff is now required to come forward with expert medical testimony showing genuine issues for trial on these elements. In support of this argument, Dr. Kosanin cites *Mozingo v. Pitt County Memorial Hospital*, 101 N.C. App. 578, 400 S.E.2d 747 (1991), *aff'd*, 331 N.C. 182, 415 S.E.2d 341 (1992). Dr. Kosanin apparently construes the language of *Mozingo* to require expert testimony at the summary judgment stage to show breach of the standard of care and proximate cause. However, after carefully reviewing *Mozingo*, we find no such requirement therein.

Plaintiff argues that her forecast of the evidence establishes issues of fact as to whether Dr. Kosanin negligently provided anesthesia services to her and whether this negligence proximately caused her eye injury. In support of her negligence claim, plaintiff offered the affidavit of her mother, Evelyn Glover Noell, who stated:

At [Lisa's follow-up] visit Dr. Lanier informed us that he and Dr. Kosanin had discussed the possible causes for Lisa's injury and that they had concluded the most likely cause was that Lisa's eye was improperly taped during surgery.

Plaintiff also offered her own deposition testimony, in which she made a similar statement:

Meanwhile, in the middle of the week, Dr. Lanier called and . . . said that he had spoken with Dr. Kosanin about what had happened. And the only thing they could figure out was that my eye had not been taped properly during the surgery and because of whatever procedures were done, the eye had been cut either by the oxygen in the room or the air or something . . . contributing to the two-and-a-half hours that I was on the table.

NOELL v. KOSANIN

[119 N.C. App. 191 (1995)]

Plaintiff testified in her deposition that Dr. Kosanin called her on Monday after the operation and told her,

"Verne and I have talked about it." And he said, "We just feel that your eye was not taped properly." And he said, "And I believe that's what caused your eye to be cut."

She also testified that when Dr. Lanier was removing the stitches from her nose, he told her,

". . . I really believe that your eye was not taped properly." He said, "That's the only thing we can figure out that happened." And he said, "It's unfortunate, but once in a while these things happen in surgery, and there is nothing really that you can say except I'm sorry."

Plaintiff further offered Dr. Kosanin's response to plaintiff's request for admissions in which he stated:

It is admitted that the standard of care for preparation of a patient prior to a secondary open rhinoplasty and removal and replacement of a chin implant procedure under general anesthesia requires that the patient's eyes be taped shut to prevent drying of the eye during surgery.

Finally, plaintiff offered the following deposition testimony of Dr. Kosanin:

Q. And that is, again, the standard of care . . . to tape the eyes closed?

A. Yes.

Q. And if the eyes are not properly taped closed, would that be negligence?

A. It should not—yes, that's correct.

Plaintiff contends that this evidence not only establishes the applicable standard of care but also creates jury questions on the issues of breach and proximate cause.

Summary judgment is appropriate where no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Mozingo v. Pitt County Memorial Hospital*, 331 N.C. 182, 187, 415 S.E.2d 341, 344 (1992). All evidence offered at the hearing must be viewed in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference to be drawn from the

evidence. *Beaver v. Hancock*, 72 N.C. App. 306, 310, 324 S.E.2d 294, 298 (1985). When a defendant moves for summary judgment and offers evidence demonstrating that no genuine issues of material fact exist or that plaintiff cannot make out an essential element of her claim, the plaintiff must then come forward with specific facts showing a genuine issue for trial. *Id.*

In the instant case, Dr. Kosanin's admissions established that the appropriate standard of care was to tape the eyes shut during surgery to prevent them from drying. Furthermore, according to plaintiff, Drs. Kosanin and Lanier told her they had concluded that the most likely cause of her injury was that her eye was not taped shut properly during surgery. Finally, Dr. McCracken's statement during treatment that plaintiff's injury happened "during her surgical procedure" supports the inference that there was a causal connection between the actions of Dr. Kosanin and plaintiff's injury. When viewed in the light most favorable to plaintiff, this evidence establishes issues of fact as to whether Dr. Kosanin breached the applicable standard of care and thereby proximately caused plaintiff's injury. Therefore, the trial court erred in granting summary judgment in favor of Dr. Kosanin.

[2] We next examine plaintiff's claim that summary judgment was improperly granted in favor of Dr. Lanier. Plaintiff conceded at oral argument that the only theory on which she is now proceeding against Dr. Lanier is apparent agency. The doctrine of apparent agency holds that "a principal who represents to a third party that another is his agent is liable for harm caused the third party by the apparent agent if the third party justifiably relied on the principal's representation." *Hoffman v. Moore Regional Hospital*, 114 N.C. App. 248, 252, 441 S.E.2d 567, 570, *disc. rev. denied*, 336 N.C. 605, 447 S.E.2d 391 (1994). Plaintiff argues that the evidence presented at summary judgment was sufficient to create a factual issue as to whether Dr. Lanier could be held liable for Dr. Kosanin's negligence based on apparent agency.

The evidence showed that since 1986, Dr. Kosanin served as the primary anesthesiologist for Dr. Lanier. Beginning in April 1989, Dr. Kosanin had administered anesthesia to all of Dr. Lanier's patients requiring general anesthesia. Dr. Kosanin would furnish Dr. Lanier with a list of times when he was available for administering anesthesia, and Dr. Lanier would schedule his surgeries accordingly. Dr. Lanier's office would telephone Dr. Kosanin with the schedule of cases for the following week.

Plaintiff testified that she chose Dr. Lanier to do her plastic surgery because she had heard he was "the best." Plaintiff first spoke to Dr. Kosanin the day before her surgery when he telephoned her to explain the anesthesia procedure to her. Prior to that call, Dr. Kosanin had sent plaintiff a pamphlet explaining his background and reviewing general anesthesia procedures. The pamphlet, entitled *You and Your Anesthesiologist*, stated that "[s]ince April 1989, [Dr. Kosanin] works jointly with Dr. Verne C. Lanier, Jr., a plastic surgeon." Following her surgery, the only bill plaintiff received was through Dr. Lanier's business office and included a surgical fee, an anesthesia fee, and a facility fee.

These facts are sufficient to create a jury question as to whether plaintiff reasonably assumed Dr. Lanier was in charge of her entire surgical procedure, including anesthesia care and recovery. Thus, we cannot conclude as a matter of law that plaintiff's apparent agency claim against Dr. Lanier fails. We therefore hold that the trial judge erred in granting summary judgment in favor of Dr. Lanier on this issue.

Reversed and remanded.

Judges EAGLES and MARTIN, JOHN C. concur.