MARY LOUISE DIGGS, Plaintiff v. NOVANT HEALTH, INC., NOVANT HEALTH TRIAD REGION, L.L.C., FORSYTH MEMORIAL HOSPITAL, INC., ALL d/b/a FORSYTH MEDICAL CENTER, SHEILA CRUMB, JOSEPH McCONVILLE, M.D., AND PIEDMONT ANESTHESIA & PAIN CONSULTANTS, P.A., Defendants

No. COA04-1415

(Filed 2 May 2006)

1. **Evidence; Witnesses— nurse—qualifications—opinion about medical causation**

The trial court erred in a medical malpractice case by granting summary judgment in favor of defendant Forsyth Memorial Hospital, Inc. (FMH), and the case is remanded for further proceedings with respect to the claims based on the acts of the hospital nursing staff, because: (1) plaintiff forecast sufficient evidence that their nurse witness was qualified to testify as an expert under N.C.G.S. § 8C-1, Rule 702(b)(2) when the deposition offered by defendants concerning the witness does not necessarily contradict the affidavit offered by plaintiff, the witness's affidavit stated that floor nurses are usually registered nurses, and the difference between the witness's work experiences and the work experience of the hospital nursing staff goes to the weight but not the admissibility of the witness's evidence; (2) plaintiff's expert was qualified to give an opinion about medical causation even though she was a nurse and not a licensed physician; and (3) FMH employed the nurses.

2. **Medical Malpractice— acts of nurses—hospital owners not liable**

The trial court did not err in a medical malpractice case by entering summary judgment in favor of defendants Novant Health, Inc. and Novant Health Triad Region, L.L.C., the owners of Forsyth Memorial Hospital, with respect to claims based on the acts of the hospital nursing staff, because: (1) these defendants did not employ the hospital nursing staff; and (2) plaintiffs did not offer evidence that the hospital loaned the employees to the owners or that the owners had in fact supervised and controlled the pertinent individuals.

3. **Medical Malpractice— anesthesiology services—apparent agency**

The trial court erred in a medical malpractice case by entering summary judgment in favor of defendant Forsyth Memorial

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

Hospital (FMH) but did not err by entering summary judgment in favor of defendants Novant Health Triad Region, L.L.C. (NHTR) and Novant Health, Inc. (NHI), the owners of FMH, with respect to the claims of negligence of the anesthesiology defendants based on apparent agency, because: (1) in regard to FMH, plaintiff submitted sufficient evidence of apparent authority when a jury could decide based on the consent form that plaintiff was, through the form, requesting anesthesia services from FMH and that, given the distinction made between plaintiff's personal physician and the unnamed anesthesiologist, plaintiff was accepting those services in the reasonable belief that the services would be provided by the hospital and its employees; and (2) in regard to NHTR and NHI, the record contains no evidence they, as opposed to the hospital, held themselves out as providing anesthesia services or that they contracted to supply the services.

**4. Discovery— documents—attorney-client privilege—work product doctrine**

The trial court erred by denying plaintiff's motion to compel defendant hospital to produce documents in its risk management file pertaining to the perforation of plaintiff's esophagus during surgery on the ground that the documents were protected under N.C.G.S. 1A-1, Rules 26(b)(3) by the attorney-client privilege and the work product doctrine where the record is insufficient to show whether the documents were prepared in the ordinary course of business pursuant to hospital policy or were prepared in anticipation of litigation, and this cause is remanded for findings as to the author of each document, the date each document was prepared, the purpose for which each document was prepared, and the recipients of each document.

**5. Discovery— statistical reports—motion to compel**

The trial court did not err in a medical malpractice case by denying plaintiff's motion to compel production of all statistical reports for Forsyth Medical Center for infection control for 1996-2000, because: (1) although plaintiff contends the documents would be admissible under N.C.G.S. § 8C-1, Rule 404(b), plaintiff does not explain to what issue in this case a pattern, practice, plan, or modus operandi would be relevant; and (2) in the absence of such a showing, the Court of Appeals cannot conclude the trial court's ruling denying this request was manifestly unreasonable.

**DIGGS v. NOVANT HEALTH, INC.**

[177 N.C. App. 290 (2006)]

Appeal by plaintiff from order entered 19 April 2004 by Judge Michael E. Helms in Forsyth County Superior Court. Heard in the Court of Appeals 22 August 2005.

> *Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy, Harold L. Kennedy, III, and Annie Brown Kennedy; and Law Offices of Willie M. Kennedy, by Willie M. Kennedy, for plaintiff-appellant.*

> *Bennett & Guthrie, P.L.L.C., by Richard V. Bennett, Roberta B. King, and Joshua H. Bennett, for defendants-appellees.*

> *Sharpless & Stavola, P.A., by Joseph P. Booth, III, for Joseph McConville, M.D., Sheila Crumb, and Piedmont Anesthesia & Pain Consultants, P.A., amicus curiae.*

GEER, Judge.

This appeal results from a medical malpractice action arising out of gall bladder surgery performed on plaintiff Mary Louise Diggs at the Forsyth Medical Center. Plaintiff's complaint alleges that defendants Forsyth Memorial Hospital, Inc., Novant Health, Inc., and Novant Health Triad Region, L.L.C. (collectively the "hospital defendants") are vicariously liable for the negligence of (1) the hospital nursing staff and (2) the team assigned to administer anesthesiology to plaintiff during her gall bladder surgery. Plaintiff has appealed from the trial court's order granting summary judgment in favor of the hospital defendants.

Based upon our review of the record, we hold that plaintiff has failed to establish a basis for holding Novant Health, Inc. ("NHI") or Novant Health Triad Region, L.L.C. ("NHTR") liable and, therefore, affirm the entry of summary judgment in favor of those two defendants. With respect to Forsyth Memorial Hospital, Inc. ("FMH"), however, we reverse.

In arguing that it is entitled to judgment as to plaintiff's claims based on the negligence of the hospital's nursing staff, FMH has only challenged the competency of the testimony of plaintiff's nursing expert. Since we hold that the testimony was admissible under N.C.R. Evid. 702 and *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599, 608, *cert. denied*, 522 U.S. 1001, 139 L. Ed. 2d 411, 118 S. Ct. 571 (1997), the trial court erred in granting summary judgment on plaintiff's claims based on the negligence of the nursing staff. With respect to the anesthesiology team, FMH has argued that it could not be held vicariously

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

liable because the individuals responsible for the anesthesia were independent contractors. Although we agree with FMH that plaintiff has failed to present sufficient evidence of actual agency, the record reveals that genuine issues of material fact exist regarding the apparent agency of the anesthesiology team. Accordingly, we hold that the trial court also erred in granting summary judgment to FMH as to the claims based on the negligence of the anesthesiology team.

## Factual and Procedural History

In September 1999, plaintiff, who was in her early eighties, was diagnosed by her gastroenterologist, Dr. Gary Poleynard, with common duct stones and complications due to gall stone disease. Dr. Poleynard recommended surgery and referred plaintiff to defendant Dr. Ismael Goco, a board-certified general surgeon. After examining plaintiff at his office, Dr. Goco concurred with Dr. Poleynard's diagnosis and his recommendation of surgery.

Plaintiff chose to have Dr. Goco perform the gall bladder surgery. Dr. Goco had hospital privileges at two hospitals in Winston-Salem: defendant Forsyth Medical Center ("FMC") and Medical Park Hospital, Inc. On 12 October 1999, plaintiff was admitted to FMC. FMC is operated by defendant FMH. NHTR owns FMH and is in turn owned by NHI.

Plaintiff's gall bladder surgery required general anesthesia. Piedmont Anesthesia & Pain Consultants, P.A. ("Piedmont") had a contract with FMH that granted Piedmont the exclusive right to provide anesthesia services at FMC. Piedmont employees Dr. Joseph McConville and nurse Sheila Crumb were responsible for administering anesthesia to plaintiff through an induction and intubation process. Ms. Crumb performed the intubation, which involved inserting a tube into plaintiff's trachea, under the supervision of Dr. McConville. Ms. Crumb made three attempts before successfully completing the intubation. At some point during the attempts, Ms. Crumb perforated plaintiff's esophagus, a fact that was not discovered until many hours after the gall bladder surgery was over. Plaintiff contends that as a result of that perforation, she has suffered severe and permanent injuries.

On 11 October 2002, plaintiff filed suit against not only the hospital defendants, but also Ms. Crumb, Dr. McConville, and Piedmont (collectively "the anesthesiology defendants"). The complaint alleged that the anesthesiology defendants were individually liable for their

negligence in administering the anesthesia and that the hospital defendants were vicariously liable for the anesthesiology defendants' negligence, as well as the negligence of the hospital floor nurses who, following plaintiff's surgery, failed to immediately notice the perforation.[1]

On 5 March 2004, plaintiff moved to compel the hospital defendants to respond to certain interrogatories and requests for production of documents. On 15 April 2004, the trial court entered an order allowing this motion in part and denying this motion in part. Plaintiff has appealed this order to the extent it refused to order production of certain documents.

On 22 March 2004, the hospital defendants moved for summary judgment. On 19 April 2004, the trial court granted that motion. Since plaintiff voluntarily dismissed her claims against the anesthesiology defendants on 16 April 2004, plaintiff's appeal of this summary judgment order is properly before this Court as an appeal from a final judgment.

### Summary Judgment Order

This Court will uphold a trial court's grant of summary judgment "if considering the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 393-94, 499 S.E.2d 772, 775 (1998). The moving parties—in this case, the hospital defendants—bear the initial burden of showing the lack of any triable issue of fact and the propriety of summary judgment. *Id.* at 394, 499 S.E.2d at 775.

Once the moving party has met its initial burden, in order to survive summary judgment, the nonmoving party—here, plaintiff—must produce " 'a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial.' " *Id.* at 394, 499 S.E.2d at 775 (quoting *Collingwood v. Gen. Elec. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)). On appeal, we view the evidence in the light most favorable to the nonmoving party and decide whether summary judgment was appropriate under a *de novo* standard of review. *Falk Integrated Techs., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999).

---

1. On 14 October 2002, plaintiff amended her original complaint to include Dr. Goco and his practice, Goco Surgical Associates, P.L.L.C., as additional defendants. Plaintiff later voluntarily dismissed those claims.

## I. Plaintiff's Claims Based on Negligence of the Nursing Staff

[1] Plaintiff contends that the hospital nurses breached their duty of care by failing to notify plaintiff's anesthesiologist promptly when they observed plaintiff's troubled breathing and sharp throat pain following her surgery. According to plaintiff, had the nurses done so, the perforation of her esophagus would have been identified earlier and lessened the seriousness of the injuries resulting from that perforation. In support of this claim, plaintiff relies upon the expert testimony of a nurse, Rosalyn Marie Harris-Offutt.

Defendants, however, argue that they are entitled to summary judgment because (1) Ms. Harris-Offutt was not qualified to testify as an expert witness under Rule 702(b)(2) of the Rules of Evidence,[2] and (2) Ms. Harris-Offutt, as a nurse, is not qualified to testify regarding medical causation. In opposing a motion for summary judgment in a medical malpractice case, a plaintiff must demonstrate that her expert witness is competent to testify and, in the absence of such a showing, summary judgment is properly granted. *See Weatherford v. Glassman*, 129 N.C. App. 618, 623, 500 S.E.2d 466, 469 (1998) (holding that deposition testimony offered in opposition to a motion for summary judgment in a medical malpractice case must reveal that the witness is competent to testify as to the matters at issue). The question before this Court is, therefore, whether the record reveals that Ms. Harris-Offutt is competent to testify.

### A. Rule 702(b)(2) of the Rules of Evidence

Rule 702(b) provides that medical malpractice experts are not qualified to testify unless they are licensed health care providers who meet certain criteria, including the following:

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar

---

2. Defendants also contended at oral argument that Nurse Harris-Offutt does not meet the requirements of Rule 702(a). Since, however, defendants did not make this argument in their appellate brief, but rather limited their argument and citation of authority to Rule 702(b)(2), we do not address it.

specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients . . . .

Defendants contend that Ms. Harris-Offutt is unqualified under Rule 702(b) because she had not been active in the clinical practice of nursing in the year preceding plaintiff's injury.

In support of their contention, defendants point to the deposition testimony of Janet Day Berrier, a representative of Thomasville Medical Center where Ms. Harris-Offutt was at one time employed. Ms. Berrier testified that the last date that Ms. Harris-Offutt worked for Thomasville Medical Center as a certified registered nurse anesthetist was 31 December 1986. Plaintiff, on the other hand, filed an affidavit from Ms. Harris-Offutt, stating: "During the year immediately preceding October 12, 1999; I devoted a majority of my professional time to the active clinical practice of nursing as a registered nurse[.]"

Although defendants point to Ms. Harris-Offutt's deposition as showing that she spends her time as a legal consultant rather than as a nurse, Ms. Harris-Offutt also stated in her deposition that she spends part of her time in the clinical practice of nursing and part of her time engaging in legal consulting. Thus, the deposition offered by defendants does not necessarily contradict the affidavit offered by plaintiff.

Defendants further argue that Ms. Harris-Offutt's clinical work is not relevant since she worked as a registered nurse and not as a floor nurse. Ms. Harris-Offutt's affidavit states, however:

There is no specialty in nursing known as "floor nursing." Floor nurses in hospitals are usually registered nurses. Registered nurses are not limited to the hospital setting, but work in many different settings including nursing homes, the private offices of physicians and the private offices of registered nurses[.]

Defendants offered no expert testimony to the contrary.

Defendants' remaining arguments regarding the differences between Ms. Harris-Offutt's work experiences and the work experience of the hospital nursing staff go to the weight, but not the admissibility, of Ms. Harris-Offutt's evidence. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 461, 597 S.E.2d 674, 688 (2004) (holding that once an expert has passed Rule 702's threshold of admissibility, "lingering

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility"). Thus, for purposes of summary judgment, plaintiff has forecast sufficient evidence that Ms. Harris-Offutt is qualified to testify under Rule 702(b)(2).

B. Nurse Expert's Testimony Regarding Medical Causation

Plaintiff and defendants also disagree as to whether Ms. Harris-Offutt is qualified to give an opinion about medical causation because she is a nurse and not a licensed physician. Defendants' position has been rejected by our Supreme Court.

In *State v. Tyler*, 346 N.C. 187, 204, 485 S.E.2d 599, 608 (emphasis added) (internal citations omitted) (quoting *State v. Mitchell*, 283 N.C. 462, 467, 196 S.E.2d 736, 739 (1973)), *cert. denied*, 522 U.S. 1001, 139 L. Ed. 2d 411, 118 S. Ct. 571 (1997), the Supreme Court held:

> "The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he was better qualified than the jury to form an opinion on the subject matter to which his testimony applies." The evidence in the present case clearly indicates that [Nurse] Rosenfeld, through both study and experience, was better qualified than the jury to form an opinion on the cause of Fleetwood's death and on the effect of the sedative medication Versed. *Rosenfeld's position as a nurse was merely a factor to be considered by the jury in evaluating the weight and credibility of her testimony.*

*See also State v. White*, 340 N.C. 264, 294, 457 S.E.2d 841, 858 ("Nurses are qualified to render expert opinions as to the cause of a physical injury even though they are not licensed to diagnose illnesses or prescribe treatment, and there is no basis for any preference of licensed physicians for such medical testimony."), *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436, 116 S. Ct. 530 (1995). These decisions are controlling. Ms. Harris-Offutt's testimony as to medical causation cannot be excluded simply because she is not a physician.

In sum, we hold that plaintiff has made the necessary forecast that Ms. Harris-Offutt is qualified to render expert testimony under Rule 702(b)(2) and that prior case law establishes that she may testify regarding medical causation. Since defendants have relied upon no other argument to justify summary judgment in connection with neg-

ligence by the hospital staff nurses, we further hold that the trial court erred in granting summary judgment as to those claims with respect to FMH, which employed the nurses.

### C. Liability of NHI and NHTR

**[2]** Defendants NHI and NHTR, however, argue that the trial court properly dismissed them as defendants because they did not employ the hospital nursing staff. They submitted evidence that NHI is "the sole member" of NHTR, while NHTR is "the sole member" of FMH, which operates FMC. Further, according to defendants' evidence, "[n]either [NHTR] nor [NHI] operate the hospital presently known as Forsyth Medical Center." Specifically, "all of the employees of Forsyth Medical Center . . . are employed by Forsyth Memorial Hospital, Inc." Plaintiff has presented no contrary evidence.

Instead, plaintiff cites *Cahill v. HCA Mgmt. Co.*, 812 F.2d 170 (4th Cir. 1987), in support of her contention that "[b]oth the owners and operators of a hospital can be held liable for the negligence of its employees, servants and agents." In *Cahill*, the district court had entered a directed verdict in favor of a hospital management company when the negligent individual was employed by the hospital and not the management company. The Fourth Circuit reversed the directed verdict because the plaintiff presented evidence that the hospital loaned the employee to the management company and the management company had in fact supervised and controlled the individual. *Id.* at 171. Plaintiff in this case has offered no comparable evidence. Accordingly, the trial court properly entered summary judgment in favor of NHTR and NHI with respect to the claims based on the acts of the hospital nursing staff.

### II. Plaintiff's Claims Based on Negligence of the Anesthesiology Defendants

**[3]** Plaintiff has also asserted claims against the hospital defendants based on the negligence of the anesthesiology defendants, including Dr. McConville, Ms. Crumb, and Piedmont. The hospital defendants contend that the trial court properly granted summary judgment because the anesthesiology defendants were independent contractors and not employees of the hospital. Plaintiff, on the other hand, argues that she has offered sufficient evidence of actual agency, apparent agency, and a non-delegable duty to warrant denial of the motion for summary judgment.

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

A. Liability Based on Actual Agency

As this Court has held, "[u]nder the doctrine of *respondeat superior,* a hospital is liable for the negligence of a physician or surgeon acting as its agent. There will generally be no vicarious liability on an employer for the negligent acts of an independent contractor." *Hylton v. Koontz,* 138 N.C. App. 629, 635, 532 S.E.2d 252, 257 (2000) (internal citations omitted), *disc. review denied,* 353 N.C. 373, 546 S.E.2d 603 (2001). This Court has established that "[t]he vital test in determining whether an agency relationship exists is to be found in the fact that the employer has or has not retained the right of control or superintendence over the contractor or employee as to details." *Id.* at 636, 532 S.E.2d at 257 (internal quotation marks omitted). Specifically, " 'the principal must have the right to control *both the means and the details of the process* by which the agent is to accomplish his task in order for an agency relationship to exist.' " *Wyatt v. Walt Disney World Co.,* 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (emphasis added) (quoting *Williamson v. Petrosakh Joint Stock Co. of the Closed Type,* 952 F. Supp. 495, 498 (S.D. Tex. 1997)). *See also Hoffman v. Moore Reg'l Hosp., Inc.,* 114 N.C. App. 248, 251, 441 S.E.2d 567, 569 (holding that the principal must have "control and supervision over the details of the [agent's] work"), *disc. review denied,* 336 N.C. 605, 447 S.E.2d 391 (1994).

In arguing that an agency relationship existed, plaintiff relies exclusively on two contracts entered into between Piedmont and FMH: the Anesthesia Agreement and the Anesthesia Services Agreement.[3] The Anesthesia Services Agreement specifically provided, however, that "FMH shall neither have nor exercise any control or direction over the methods by which [Piedmont] or any Physician shall perform it or his work and functions; the sole interest and responsibility of FMH and the Hospital are to assure that the services covered by this Agreement shall be performed and rendered in a competent, efficient and satisfactory manner." Further, under the agreements, (1) the physicians associated with Piedmont are not prohibited from practicing outside of the Hospital; (2) Piedmont and the hospital bill patients separately for their respective services; (3) Piedmont is responsible for meeting its own hiring needs; and (4) Piedmont is responsible for managing its own scheduling. Our review

3. The agreements were actually between FMH and Winston-Salem Anesthesia Associates, P.A. Apparently, the latter entity subsequently became Piedmont. The parties do not dispute that the two agreements governed the relationship between FMH and Piedmont at the time of plaintiff's surgery.

of the agreements and depositions in the record does not reveal that the hospital defendants had any "right to control the manner or method" of the anesthesiology work performed by Piedmont and its personnel. *Hylton*, 138 N.C. App. at 636, 532 S.E.2d at 257 (internal quotation marks omitted).

The contractual terms relied upon by plaintiff in opposing summary judgment do not address the actual provision of anesthesia services to patients. Instead, plaintiff primarily points to FMH's right (1) to require that doctors employed by Piedmont become members of FMH's Medical-Dental Staff and that they comply with the rules and regulations governing that Staff, (2) to approve and credential all Piedmont nurse anesthetists, and (3) to require Piedmont to remove from FMH's anesthesia service any physician for specified grounds. These provisions, however, relate only to a hospital's duty to ensure that all medical personnel permitted to provide services to FMH patients are qualified to do so. *See Blanton v. Moses H. Cone Mem'l Hosp., Inc.*, 319 N.C. 372, 376, 354 S.E.2d 455, 458 (1987) ("We hold that a reasonable man of ordinary prudence in the position of the hospital owes a duty of care to its patients to ascertain that a doctor is qualified to perform an operation before granting him the privilege to do so."). They do not establish the degree of control necessary for agency.

The remaining provisions cited by plaintiff constitute general policies detailing how the two businesses—FMH and Piedmont—would cooperate and coordinate their work. As such, they cannot support a finding of agency. *See Hoffman*, 114 N.C. App. at 251, 441 S.E.2d at 569 (holding that "general policy rules . . . are not indicative of that kind of control and supervision over the details of a physician's work that a plaintiff must show in order to prove that there was an employer-employee relationship").

We hold that the provisions in the agreements between Piedmont and FMH are materially indistinguishable from those in *Hylton* and *Hoffman* that this Court held, in the absence of any further evidence, warranted summary judgment. *See Hylton*, 138 N.C. App. at 636-37, 532 S.E.2d at 257-58 (upholding grant of summary judgment when the anesthesiology agreement provided that the hospital would have no control over the method and means by which the anesthesiologists performed their work, the physicians were not precluded from practicing outside the hospital, the physicians received no compensation from the hospital, the parties billed the patient separately, and the

hospital did not schedule the physicians); *Hoffman*, 114 N.C. App. at 250-51, 441 S.E.2d at 569 (upholding grant of summary judgment when the physician was a member of a private group, the physician's schedule was determined by the group rather than the hospital, and the patient was billed for the physician's services by the group and not the hospital). Plaintiff has, therefore, failed to present sufficient evidence to establish a *prima facie* case of actual agency.

B. Liability Based on Apparent Agency

It is well-established that even in the absence of an agency relationship, " '[w]here a person, by words or conduct, represents or permits it to be represented that another is his agent, he will be estopped to deny the agency as against third persons, who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency exists in fact.' " *Univ. of N.C. v. Shoemate*, 113 N.C. App. 205, 215, 437 S.E.2d 892, 898 (quoting *Barrow v. Barrow*, 220 N.C. 70, 72, 16 S.E.2d 460, 461 (1941)), *disc. review denied*, 336 N.C. 615, 447 S.E.2d 413 (1994). This doctrine of apparent agency was first considered by our Supreme Court as a basis for hospital liability for malpractice in *Smith v. Duke Univ.*, 219 N.C. 628, 14 S.E.2d 643 (1941), *overruled on other grounds by Rabon v. Rowan Mem'l Hosp., Inc.*, 269 N.C. 1, 152 S.E.2d 485 (1967).

The Court initially established the principle—addressed above— that evidence that a physician has privileges at a hospital is not sufficient, standing alone, to make the physician an agent of the hospital: "Ordinarily, the hospital undertakes only to furnish room, food, facilities for operation, and attendance, and is not liable for damages resulting from the negligence of a physician in the absence of evidence of agency, or other facts upon which the principle of *respondeat superior* can be applied." *Id.* at 634, 14 S.E.2d at 647. After concluding that the plaintiff had failed to demonstrate that the doctor—the patient's treating physician—was an agent of the hospital, the Supreme Court turned to the question of apparent agency:

> There was no evidence that [the doctor] in treating [the patient] assumed to act for Duke University otherwise than in his individual capacity as a practicing physician, *or that [the doctor] was held out by the defendant as having been employed by it to treat pay patients, or that the hospital undertook to furnish physicians and surgeons for the treatment of the maladies of patients,* and hence no liability can attach to defendant on the

theory that [the doctor] was acting within the scope of an apparent authority or employment.

*Id.* at 635, 14 S.E.2d at 648 (emphasis added).

Our Supreme Court has since recognized that, in the years following *Smith*, the nature of hospitals has substantially changed. After observing that the *Smith* assumptions regarding hospitals were "no longer appropriate in this era," *Harris v. Miller*, 335 N.C. 379, 389, 438 S.E.2d 731, 736-37 (1994), the Court explained:

> First of all, hospitals are now in the business of treatment. As stated in *Rabon v. [Rowan Memorial] Hospital*:
>
>> "The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes [sic], as well as administrative and manual workers, and they charge patients for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility."

*Id.*, 438 S.E.2d at 737 (quoting *Rabon*, 269 N.C. at 11, 152 S.E.2d at 492).

In applying the doctrine of apparent agency, courts throughout the country have struggled with this change in the nature of hospitals from institutions providing only facilities to institutions actually providing medical services, such as emergency room care or, as in this case, anesthesia. In *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142 (Ind. 1999), the Indiana Supreme Court conducted a helpful and detailed analysis of the applicability of apparent agency with respect to a hospital's liability for negligence in the provision of services, such as anesthesia, by independent contractors.

In surveying other jurisdictions, the Indiana Supreme Court noted that courts have employed apparent agency to hold hospitals liable for the negligence of independent contractors in both emergency room and anesthesia contexts. *Id.* at 150. The court explained:

**DIGGS v. NOVANT HEALTH, INC.**

[177 N.C. App. 290 (2006)]

While the language employed by these courts sometimes varies, generally they have employed tests which focus primarily on two basic factors. The first factor focuses on the hospital's manifestations and is sometimes described as an inquiry whether the hospital acted in a manner which would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital. Courts considering this factor often ask whether the hospital held itself out to the public as a provider of hospital care, for example, by mounting extensive advertising campaigns. In this regard, the hospital need not make express representations to the patient that the treating physician is an employee of the hospital; rather a representation also may be general and implied. The second factor focuses on the patient's reliance. It is sometimes characterized as an inquiry as to whether the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.

*Id.* at 151 (internal quotation marks and citations omitted). With respect to the reliance factor, the court pointed out that some jurisdictions ask whether the plaintiff reasonably believed that the hospital was providing the pertinent medical care, while other jurisdictions presume reliance. *Id.* Over all, the court concluded that "[c]entral to both of these factors—that is, the hospital's manifestations and the patient's reliance—is the question of whether the hospital provided notice to the patient that the treating physician was an independent contractor and not an employee of the hospital." *Id.*

Following its survey of the development of the law in other jurisdictions, the Indiana Supreme Court adopted the formulation of apparent agency set forth in the Restatement (Second) of Torts § 429 (1965). *Sword,* 714 N.E.2d at 152. That section of the Restatement provides:

One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Restatement (Second) of Torts § 429. The Indiana Supreme Court construed § 429 to require that the "trier of fact . . . focus on the

reasonableness of the patient's belief that the hospital or its employees were rendering health care." *Sword*, 714 N.E.2d at 152.

According to *Sword*,

> This ultimate determination is made by considering the totality of the circumstances, including the actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians. We conclude that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission.

*Id.* The court noted, however, that written notice might not suffice if the patient did not have an adequate opportunity to make an informed choice, such as in the case of a medical emergency. *Id.*

After conducting a similar survey of the development of the law nationwide, the South Carolina Supreme Court also chose to adopt the approach set out in the Restatement (Second) of Torts § 429. *Simmons v. Tuomey Reg'l Med. Ctr.*, 341 S.C. 32, 50-51, 533 S.E.2d 312, 322 (2000). The court held:

> Under section 429, the plaintiff must show that (1) the hospital held itself out to the public by offering to provide services; (2) the plaintiff looked to the hospital, rather than the individual physician, for care; and (3) a person in similar circumstances reasonably would have believed that the physician who treated him or her was a hospital employee. When the plaintiff does so, the hospital will be held vicariously liable for any negligent or wrongful acts committed by the treating physician.

*Id.* at 51, 533 S.E.2d at 322. The court limited application of this test "to those situations in which a patient seeks services at the hospital as an institution, and is treated by a physician who reasonably appears to be a hospital employee." *Id.* at 52, 533 S.E.2d at 323. It stressed that its holding did "not extend to situations in which the patient is treated in an emergency room by the patient's own physician after arranging to meet the physician there. Nor does our holding encompass situations in which a patient is admitted to a hospital by a private, independent physician whose only connection to a par-

ticular hospital is that he or she has staff privileges to admit patients to the hospital. Such patients could not reasonably believe his or her physician is a hospital employee." *Id.*

Comparable tests have been adopted in numerous other jurisdictions, particularly with respect to the rendering of anesthesia or emergency services. *See, e.g., Gilbert v. Sycamore Mun. Hosp.*, 156 Ill. 2d 511, 525, 622 N.E.2d 788, 796 (1993) (concluding (1) that the element of "holding out" is "satisfied if the hospital holds itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors," and (2) "[t]he element of justifiable reliance on the part of the plaintiff is satisfied if the plaintiff relies upon the hospital to provide complete emergency room care, rather than upon a specific physician"); *Gatlin v. Methodist Med. Ctr., Inc.*, 772 So. 2d 1023, 1027 (Miss. 2000) (with respect to a hospital's liability for the acts of an independent contractor anesthesiologist, holding that the controlling "analysis seeks to determine whether the patient was seeking treatment from the hospital, without regard for the identity of the particular physicians working at the hospital, or whether the patient instead sought the services of a particular physician who merely happened to be on staff at a particular hospital"); *White v. Methodist Hosp. South*, 844 S.W.2d 642, 647-48 (Tenn. Ct. App. 1992) (allowing, with respect to the provision of anesthesia services, an inference of reliance when a hospital offers a service and the patient has no choice as to who will perform that service); *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 210, 423 N.W.2d 848, 857 (1988) ("[W]e conclude that, if [plaintiff] proves that [the hospital] held itself out as a provider of emergency room care without informing [plaintiff] that the care was provided by independent contractors, [plaintiff] has satisfied the first requirement for proving liability under the doctrine of apparent authority. . . . In determining that a plaintiff acted in reliance upon the conduct of the hospital or its agent, . . . [c]ourts have uniformly recognized that, except when the patient enters a hospital intending to receive care from a specific physician while in the hospital, it is the reputation of the hospital itself upon which a patient relies.").

We believe the analysis of these jurisdictions is persuasive and consistent with the prior holdings of our appellate courts. In *Smith*, our Supreme Court suggested that apparent agency would be applicable to hold the hospital liable for the acts of an independent contractor if the hospital held itself out as providing services and care. 219 N.C. at 635, 14 S.E.2d at 648. In *Shoemate*, this Court

established that this "holding out" may be accomplished through either verbal representations or conduct. 113 N.C. App. at 215, 437 S.E.2d at 898.

This Court has also addressed the element of reliance in circumstances similar to those addressed by the Restatement (Second) of Torts § 429: when the patient has relied upon a medical provider to render medical services, but that provider has caused those services to be provided by an independent contractor. In *Noell v. Kosanin*, 119 N.C. App. 191, 196-97, 457 S.E.2d 742, 746 (1995), the plaintiff chose a surgeon to perform her plastic surgery based on his reputation. That surgeon used a particular anesthesiologist, who was an independent contractor, to administer anesthesia to all of his patients requiring general anesthesia. *Id.* at 196, 457 S.E.2d at 746. Consistent with this practice, the plaintiff received a pamphlet stating that the anesthesiologist worked jointly with the surgeon. This Court held that "[t]hese facts are sufficient to create a jury question as to whether plaintiff reasonably assumed [the surgeon] was in charge of her entire surgical procedure, including anesthesia care and recovery." *Id.* at 197, 457 S.E.2d at 746. This holding parallels the principle in the Restatement (Second) of Torts § 429, which asks whether a patient accepts services from an independent contractor "in the reasonable belief that the services are being rendered by the employer or by his servants."

This Court pursued a similar analysis in *Sweatt v. Wong*, 145 N.C. App. 33, 549 S.E.2d 222 (2001), in which the plaintiff engaged a particular surgeon to remove her gallbladder. While the patient was still in the hospital recovering, that surgeon went on vacation, leaving the plaintiff in the care of another doctor, who was an independent contractor. In holding that the trial court had properly denied a motion for judgment notwithstanding the verdict because issues of fact existed as to apparent agency, this Court stressed that the patient was not given a choice as to which physician would continue her care in the surgeon's absence, but rather the surgeon had simply announced that the second doctor had assisted him in the surgery and would take good care of the patient. *Id.* at 42, 549 S.E.2d at 227. This Court held that these facts were sufficient for a finding that the patient justifiably relied upon representations of agency. *Id.* This analysis, like that of § 429 and *Noell*, does not require any showing of a change of position by the patient, but rather focuses on whether the patient was relying upon the surgeon to provide services and reasonably believed that the second doctor was an agent of the surgeon.

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

Defendants point to *Hoffman* as establishing a different test. As this Court explained in *Sweatt*, however, "[i]n [*Hoffman*], the plaintiff patient sought to recover damages for alleged medical negligence from a hospital under the theory of *respondeat superior* for the *negligence of the treating physician* who was found to be an independent contractor." *Id.* (emphasis added). Although the plaintiff in *Hoffman*, who was admitted to a hospital at the request of her private physician for a particular procedure, did not choose the doctor who would perform that procedure, the consent form specifically listed five possible doctors and the patient was looking to one of those doctors to provide her care. 114 N.C. App. at 249-50, 441 S.E.2d at 569. The case fell squarely within the traditional *Smith* analysis regarding treating physicians. There was no indication in the opinion that the hospital was holding itself out as providing the services involved as opposed to simply providing facilities for the performance of the procedure by private practitioners. Under those circumstances, this Court required evidence "that Mrs. Hoffman would have sought treatment elsewhere or done anything differently had she known for a fact that [the doctor] was not an employee of the hospital." *Id.* at 252, 441 S.E.2d at 570.

When, however, a hospital does hold itself out as providing services, we believe the approach of the Restatement (Second) of Torts § 429 is consistent with our prior decisions considering apparent agency. We are also persuaded by the weight of authority from other jurisdictions. Under this approach, a plaintiff must prove that (1) the hospital has held itself out as providing medical services, (2) the plaintiff looked to the hospital rather than the individual medical provider to perform those services, and (3) the patient accepted those services in the reasonable belief that the services were being rendered by the hospital or by its employees. A hospital may avoid liability by providing meaningful notice to a patient that care is being provided by an independent contractor. *See, e.g., Cantrell v. Northeast Ga. Med. Ctr.*, 235 Ga. App. 365, 368, 508 S.E.2d 716, 719-20 (1998) (concluding that trial court did not err in granting a directed verdict to hospital when "conspicuous signage was posted and forms signed by the patient or representative revealed the independent contractor status of the doctor"), *cert. denied*, No. 599C0393, 1999 Ga. LEXIS 888 (Ga. Oct. 22, 1999).

Plaintiff has submitted sufficient evidence to meet this test. The hospital had a Department of Anesthesiology with a Chief of Anesthesiology and a Medical Director, a fact that a jury could rea-

sonably find indicated to the public that FMC was providing anesthesia services to its patients.[4] Further, defendants chose to provide those services by contracting with Piedmont to provide anesthesia services to the hospital on an exclusive basis. Piedmont doctors served as the hospital's Chief of Anesthesiology and anesthesia Medical Director. As Dr. McConville put it, his group "provide[d] the anesthesia services for the operating room at Forsyth and so there is—so our group covers the surgical caseload." Plaintiff and other surgical patients had no choice as to who would provide anesthesia services for their operations.

Plaintiff's affidavit states that she was unaware that Dr. McConville and Ms. Crumb were not employees of the hospital. She explained "I did not select Sheila Crumb nor Dr. Joseph McConville to provide medical care to me; that in choosing to have my operation at Forsyth Medical Center, I relied on the fact that medical care would be provided by employees of Forsyth Medical Center, excluding my surgeon, Dr. Goco." She further stated: "[O]ne of the reasons that I had my operation performed at Forsyth Medical Center was because it was part of Novant Health, a large healthcare organization . . . ."

In addition, plaintiff pointed to the form on FMC letterhead that she signed entitled "Consent to Operation and/or Other Procedures." The form specified: "I therefore authorize *my physician,* his or her associates or assistants to perform such surgical procedures as they, in the exercise of their professional judgment, deem necessary and advisable." (Emphasis added.) By contrast, with respect to anesthesia services, the form stated: "I authorize the administration of such anesthetics as may be necessary or advisable *by the anesthetist/anesthesiologist responsible for this service and I request the administration of such anesthetics.*" (Emphasis added.) Finally, the form stated: "I have had sufficient opportunity to discuss my condition and treatment *with my physician* and his or her associates and all of my questions have been answered to my satisfaction." (Emphasis added.)

This consent form stands in contrast to that provided to the patient in *Hoffman.* A jury could decide based on this form that plaintiff was, through this form, requesting anesthesia services from FMC and that—given the distinction made between plaintiff's personal

---

4. *Cf. Harris,* 335 N.C. at 392, 438 S.E.2d at 738 ("That the hospital's anesthesiology department trained its anesthetists indicates a retention by the hospital of the right to control those anesthetists. Nothing else appearing, it can only be inferred that the anesthetists remained the servants of the hospital while performing their surgical duties.").

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

physician and the unnamed anesthesiologist—plaintiff was accepting those services in the reasonable belief that the services would be provided by the hospital and its employees. *See Jennison v. Providence St. Vincent Med. Ctr.*, 174 Or. App. 219, 234, 25 P.3d 358, 367 (2001) ("Nowhere did the consent form indicate that the radiologists were independent contractors. Thus, it is reasonable to assume that when a patient in [plaintiff's] situation signs a consent form like the one she signed and later has an x-ray taken, the patient would believe that it would be a hospital employee who would ultimately interpret that x-ray.").

Given the current record, we hold that the trial court erred in granting summary judgment with respect to plaintiff's claims based on apparent agency with respect to defendant FMH. With respect to defendants NHTR and NHI, plaintiff argues only that "Novant held itself out to the public as owning and/or operating Forsyth Medical Center and Plaintiff relied upon this." Her affidavit stated "that the hospital held itself out to me and the public as being part of Novant." Plaintiff, however, cites no authority in support of her contention that NHTR and NHI may be held liable based on apparent agency for the acts of Dr. McConville and Ms. Crumb. N.C.R. App. P. 28(b)(6) ("Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). The record contains no evidence that NHTR and NHI, as opposed to the hospital, held themselves out as providing anesthesia services or that they, as opposed to the hospital, contracted to supply the services. Accordingly, the trial court properly granted summary judgment as to NHTR and NHI.

Plaintiff has also argued (1) that the hospital defendants owed plaintiff a non-delegable duty and (2) that the hospital defendants are liable, even apart from agency principles, for the failure to obtain informed consent from plaintiff regarding anesthesia services. Plaintiff has cited no authority suggesting that these theories provide a basis for holding NHI or NHTR liable. With respect to FMH, because of our resolution of this appeal, we need not address these alternative arguments.

### Discovery of Privileged Documents

[4] On appeal, plaintiff also argues that the trial judge erred in denying her motion to compel production of (1) certain documents contended by defendants to be protected by attorney-client privilege and the work product doctrine and (2) "[a]ll Statistical Reports for

Forsyth Medical Center for infection control for 1996-2000." It is well established, even with respect to claims of work product and attorney-client privilege, that "orders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Evans v. United Servs. Auto. Assoc.*, 142 N.C. App. 18, 27, 541 S.E.2d 782, 788, *cert. denied*, 353 N.C. 371, 547 S.E.2d 810 (2001).

### A. Attorney-Client Privilege and Work Product

Plaintiff's document request number 19 sought: "Any documents not in Plaintiff's hospital chart at Forsyth Medical Center which discuss the perforation of Plaintiff's esophagus and/or any problems regarding Plaintiff's intubation during her October 12, 1999 hospitalization." After contending that the responsive documents were protected from production by the attorney-client privilege and the work product doctrine as set forth in Rule 26(b)(3) of the Rules of Civil Procedure, defendants submitted the documents to the trial judge for *in camera* review. After reviewing the documents, the trial court denied plaintiff's motion to compel with respect to request number 19.

On appeal, defendants filed with this Court a sealed copy of the documents reviewed by the trial court and included in their brief a general description of those documents. The record indicates that these documents were defendants' "Risk Management file." We have carefully examined the documents and the information provided by defendants regarding the nature of those documents.

Rule 26(b)(3) provides that documents prepared "in anticipation of litigation" are afforded a qualified immunity from discovery. The party asserting the work product privilege—in this case, defendants—bears the burden of showing that the documents were prepared "in anticipation of litigation." *Evans*, 142 N.C. App. at 29, 541 S.E.2d at 789. This Court has explained that "[t]he phrase 'in anticipation of litigation' is an elastic concept" and "North Carolina's definition of [the phrase] is unique in its phraseology." *Cook v. Wake County Hosp. Sys., Inc.*, 125 N.C. App. 618, 623, 482 S.E.2d 546, 550, *disc. review allowed*, 346 N.C. 277, 487 S.E.2d 543, *appeal withdrawn*, 347 N.C. 397, 494 S.E.2d 404 (1997). According to our Supreme Court, documents prepared "in anticipation of litigation" include "not only materials prepared after the other party has secured an attorney, but those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation." *Willis v. Duke Power Co.*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976).

DIGGS v. NOVANT HEALTH, INC.

[177 N.C. App. 290 (2006)]

Nevertheless, "[m]aterials prepared in the ordinary course of business are not protected" under Rule 26(b)(3). *Id.* This Court, applying *Willis*, considered whether an accident report prepared by a hospital regarding a doctor's slip and fall constituted work product. After noting that risk management documents do not automatically constitute work product, the Court reviewed the hospital's "risk management policy." *Cook*, 125 N.C. App. at 624-25, 482 S.E.2d at 551. That policy set out mandatory reporting procedures for incidents and accidents as an administrative tool for identifying areas of risk and reporting occurrences not consistent with desired safe operation of the hospital or care of patients. *Id.* at 625, 482 S.E.2d at 551. The Court pointed out that the accident reports were not discretionary, but were required of all employees. *Id.* Once a report was made, the administration and Risk Management would make the final decision to report potential claims of liability. *Id.* A monthly summary of reports was prepared for administrative and medical staff review. *Id.*

Based on these policy provisions, the Court concluded that "defendant's accident reporting policy exists to serve a number of nonlitigation, business purposes" and imposes a "continuing duty on hospital employees to report any extraordinary occurrences within the hospital to risk management" regardless whether the hospital chose to consult its attorney in anticipation of litigation. *Id.* The Court concluded:

> Here, absent any other salient facts, it cannot be fairly said that the employee prepared the accident report because of the prospect of litigation. In short, the accident report would have been compiled, pursuant to the hospital's policy, regardless of whether Cook intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital.
>
> . . . We conclude that defendant's position is contrary to the discovery rules established by the *Willis* and [*Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir.), *cert. denied*, 484 U.S. 917, 98 L. Ed. 2d 225, 108 S. Ct. 268 (1987)] Courts, and therefore, the trial court erred in denying plaintiffs' motions to compel production of the accident report.

*Id.* at 625-26, 482 S.E.2d at 551-52.

In this case, plaintiff has submitted FMH's policy "for the reporting of all unexpected events." This policy appears materially indistinguishable from that in *Cook* and, therefore, under *Cook*, documents

**DIGGS v. NOVANT HEALTH, INC.**

[177 N.C. App. 290 (2006)]

generated pursuant to that policy would not be entitled to protection under Rule 26(b)(3). We are, however, unable to determine from the current record whether the documents at issue were generated pursuant to that policy. While none of the documents are entitled "Quality Assessment Report," as specified in the policy, certain documents appear to correspond to the reports and summaries required by the hospital's policy, including documents numbered 61-68 and 70-81.

We must therefore remand to the trial court for further review as to these documents. *See Willis*, 291 N.C. at 36, 229 S.E.2d at 201 (remanding because "[t]he record is insufficient for us to determine the extent to which" defendant's claims files "may be subject to the trial preparation immunity"). On remand, defendants bear the burden of demonstrating that the specified documents were not prepared pursuant to the hospital policy or were not otherwise documents "prepared in the ordinary course of business." *Id.* at 35, 229 S.E.2d at 201.

We are similarly unable to determine on this record whether documents 92-107 and 154 are entitled to protection under the work product doctrine or the attorney-client privilege. Because the record contains no indication who prepared the documents or for what purpose, we must remand for further review. On remand, defendants should submit affidavits specifying the author of each document, the date each document was prepared, the purpose for which the document was prepared, and the recipients—if any—of each document.

Document 168 is not addressed by defendants in their brief. This document is a letter by Dr. McConville apparently to his insurance agency dated 18 October 1999 relating to plaintiff. We do not know on what basis defendants contend this document is protected from disclosure or if the trial judge considered whether this document was subject to production apart from any risk management documents otherwise protected. Plaintiff has not had any opportunity to argue why she is entitled to have this document produced. Plaintiff may even have already received this document in other discovery. Without expressing any opinion on the issue, we leave for consideration on remand whether this document should be produced.

With respect to the remaining documents, we believe that the trial court did not abuse its discretion in determining that documents numbered 84-91, 108-53, 155-60, 164, 169-70, and 179-203 were protected either by the attorney-client privilege or the work prod-

uct doctrine. Defendants have represented that copies of documents 161-63 and 165-67 have already been produced to plaintiff; these are simply copies attached to documents protected from disclosure. As to the documents specified in this paragraph, we affirm the trial court's order.

### B. Statistical Reports

**[5]** Defendant objected to plaintiff's request for "[a]ll Statistical Reports for Forsyth Medical Center for infection control for 1996-2000" on the grounds of relevance. Defendant points out that "[t]here is no dispute in this case that the 'infection' which the appellant had was an internal one which came from a leaking esophagus, not from infection of her incision or other source in the hospital environment." While plaintiff argues, without any citation to the record, that the reports deal with all infections at FMC (and not just infections from external sources) and that the documents "would be clearly admissible under Rule 404(b) of the North Carolina Rules of Evidence to prove a pattern, practice, plan and *modus operandi*," plaintiff does not explain to what issue in this case a pattern, practice, plan, or *modus operandi* would be relevant. In the absence of such a showing, we cannot conclude that the trial court's ruling denying this request was manifestly unreasonable.

### Conclusion

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of FMH and remand this action for further proceedings. We affirm the entry of summary judgment as to NHI and NHTR. We reverse the trial court's discovery order with respect to document numbers 61-68, 70-81, 92-107, 154, and 168 and remand for further review regarding whether they are entitled to protection under Rule 26(b)(3) or the attorney-client privilege. We affirm the remaining portion of the trial court's discovery order.

Affirmed in part, reversed in part, and remanded.

Chief Judge MARTIN and Judge BRYANT concur.