NO. COA13-221

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

LESLIE WEBB, Administratrix of the
Estate of ROBERT B. WEBB, III,
    Plaintiff-Appellant,

    v.                                Forsyth County
                                        No. 10-CVS-1990

WAKE FOREST UNIVERSITY BAPTIST
MEDICAL CENTER, UNIVERSITY DENTAL
ASSOCIATES, NORTH CAROLINA BAPTIST
HOSPITAL, WAKE FOREST UNIVERSITY,
WAKE FOREST UNIVERSITY PHYSICIANS,
SHILPA S. BUSS, DDS, and REENA
PATEL, DDS,
    Defendants-Appellees.


Appeal by Plaintiff from order entered 27 August 2012 by

Judge John O. Craig, III in Superior Court, Forsyth County.

Heard in the Court of Appeals 10 September 2013.


      *Kennedy, Kennedy, Kennedy, and Kennedy, LLP, by Harold L.
      Kennedy, III and Harvey L. Kennedy, for Plaintiff-
      Appellant.*

      *Coffey Bomar LLP, by Tamura D. Coffey and J. Rebekah
      Biggerstaff, for Defendants-Appellees Wake Forest
      University Baptist Medical Center, North Carolina Baptist
      Hospital, Wake Forest University, and Wake Forest
      University Physicians.*

      *Carruthers & Roth, P.A., by Kenneth L. Jones and Michal E.
      Yarborough, for Defendant-Appellee University Dental
      Associates.*


McGEE, Judge.

Leslie Webb, Administratrix of the Estate of Robert B. Webb, III, ("Plaintiff"), filed a complaint against Wake Forest University Baptist Medical Center, University Dental Associates, North Carolina Baptist Hospital, Wake Forest University, Wake Forest University Physicians, Shilpa S. Buss, DDS, and Reena Patel, DDS ("Defendants") on 13 July 2010. Plaintiff alleged that Robert B. Webb, III, ("the Decedent") was under general anesthesia for oral surgery, teeth cleaning, and the extraction of four teeth performed on 13 March 2008. The Decedent was sent home the same day following the procedure. He became unresponsive at home on 14 March 2008 and was pronounced dead on 15 March 2008. Plaintiff alleged that Defendants were negligent in their treatment of the Decedent and that this negligence was the proximate cause of his death.

Defendants Wake Forest University Baptist Medical Center, North Carolina Baptist Hospital, Wake Forest University, Wake Forest University Physicians, Shilpa S. Buss, DDS, and Reena Patel, DDS, filed an answer on 30 September 2010. Defendant University Dental Associates filed a separate answer on 5 October 2010.

Defendants Wake Forest University Baptist Medical Center, North Carolina Baptist Hospital, Wake Forest University, Wake Forest University Physicians, Shilpa S. Buss, DDS, and Reena

Patel, DDS, filed a motion for summary judgment on 26 July 2012. Defendant University Dental Associates filed a separate motion for summary judgment on 31 July 2012.

The trial court granted the motions for summary judgment as to "any and all allegations, claims, and causes of action involving the dental care provided to [the D]ecedent." The trial court also granted the motion for summary judgment "as to any and all allegations, claims, and causes of action that relate to the dental care provided to [the D]ecedent involving the alleged negligence of [D]efendants Wake Forest University Baptist Medical Center, North Carolina Baptist Hospital, Wake Forest University, and Wake Forest University Physicians." The trial court denied Defendants' summary judgment motion relating to anesthesia care.

Plaintiff appeals.

## I. Summary Judgment Rule

Plaintiff argues the trial court erred in granting Defendants' motions for summary judgment relating to dental care of Decedent. A trial court should grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment

as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2013); *see also Lord v. Beerman*, 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008).

Our Supreme Court has "emphasized that summary judgment is a drastic measure, and it should be used with caution. This is especially true in a negligence case[.]" *Williams v. Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979) (internal citation omitted). The purpose of N.C.G.S. § 1A-1, Rule 56 "is to eliminate formal trials where only questions of law are involved." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Id.*

"The moving party carries the burden of establishing the lack of any triable issue." *Lord*, 191 N.C. App. at 293, 664 S.E.2d at 334. "The movant may meet his or her burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim[.]" *Id.* (internal quotation marks omitted). "Generally this means that on undisputed aspects of the opposing evidential forecast, where there is no genuine

issue of fact, the moving party is entitled to judgment as a matter of law." *Lowe*, 305 N.C. at 369, 289 S.E.2d at 366 (internal quotation marks omitted).

Once the moving party has met its initial burden, the nonmoving party must produce "a forecast of evidence demonstrating that the [nonmoving party] will be able to make out at least a prima facie case at trial" in order to survive summary judgment. *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 855 (2006) (alteration in original). "The opposing [nonmoving] party need not convince the court that he would prevail on a triable issue of material fact but only that the issue exists." *Lowe*, 305 N.C. at 370, 289 S.E.2d at 366.

## II. Analysis

Plaintiff's complaint and Defendants' answers show there are genuine issues of material fact in this matter. The complaint alleged the following:

> XII. That the oral surgery performed on [the Decedent] lasted 8 hours and 20 minutes, approximately four times longer than the time for the procedure represented to the parents of [the Decedent]. The oral surgery consisted of teeth cleaning and the extraction of four teeth. The patient was under general anesthesia for over 8 hours. . . .
>
> XIV. That the oral surgeons and the anesthesia treatment team were aware of the

fact that a known risk of having a patient under general anesthesia for an extensive period of time was that the patient could develop pneumonia.

XV. That in spite of the lengthy surgery and the extended period of time that the patient was under general anesthesia, upon information and belief, the anesthesia treatment team in consultation with the two oral surgeons made the decision to send [the Decedent] home on March 13, 2008 post surgery.

XVI. On March 14, 2008, [the Decedent] became unresponsive at home. He was rushed by EMT to Moses Cone Hospital in Greensboro, North Carolina. At Moses Cone Hospital, [the Decedent] was diagnosed as having cerebral edema on CT, anoxic brain damage and cardiac arrest. . . .

XVIII. An autopsy was performed, and the cause of death was determined to be bronchopneumonia following comprehensive dental care under general anesthesia.

Defendants Wake Forest University Baptist Medical Center, North Carolina Baptist Hospital, Wake Forest University, Wake Forest University Physicians, Shilpa S. Buss, DDS, and Reena Patel, DDS, denied all of the above allegations in their answer. Defendant University Dental Associates filed a separate answer in which it also denied the above allegations.

Defendants, in their briefs to this Court and at oral argument, focused on the admissibility of expert testimony under N.C. Gen. Stat. § 8C-1, Rule 702(b). The trial court also

stated during the hearing that Plaintiff had "run squarely into a brick wall with Rule 702(b)."

However, we note that the record contains no motion to exclude Plaintiff's expert witnesses. Rather, at the hearing on Defendants' motions for summary judgment, Defendants argued Plaintiff failed to show causation, as follows:

> Your Honor . . . we will concede that [Plaintiff has] three expert witnesses, all who have testified about standard of care issues. That is not what we're arguing about. We are strictly arguing about whether or not they had made a causal link with these three experts to the dental care in the case.

Medical malpractice encompasses actions arising from the performance of dental care. "[T]he term 'medical malpractice action' means a civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11 (2009).[1]

"To survive a motion for summary judgment in a medical malpractice action, a plaintiff must forecast evidence

---

[1] Our General Assembly amended this statute in 2011. 2011 N.C. Sess. Laws ch. 400 § 5. The amendment applies "to causes of actions arising on or after" 1 October 2011. *Id.* at § 11. The cause of action in the present case arose on or about 13 March 2008. The amendment therefore is not applicable to the present case.

demonstrating that the treatment administered by [the] defendant was in negligent violation of the accepted standard of medical care in the community[,] and that [the] defendant's treatment proximately caused the injury." *Lord*, 191 N.C. App. at 293-94, 664 S.E.2d at 334 (alterations in original) (internal quotation marks omitted). "Proximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred[.]" *Id.* at 294, 664 S.E.2d at 334.

In the present case, Plaintiff forecast evidence showing that the treatment administered by Defendants was in negligent violation of the accepted standard of care in the community. Dr. Behrman, a Doctor of Dental Medicine, testified on behalf of the Decedent in a deposition that "[t]here was no clearance obtained on a significantly medically compromised person by the physician of record, the physician caring for him[.]" Dr. Behrman testified as follows regarding the necessity to consult with the physician of record prior to the dental procedure:

> This is bread and butter of training programs, the way we teach the residents, the way we've been taught; using the medical providers, obtaining the consult and such. This is what we do and what we're trained to do, what I expect my residents to do, what I have to demonstrate during accreditation visits within a residency program.

Plaintiff also forecast evidence, in depositions and in the complaint, of the proximate cause of death. The portion of Dr. Behrman's deposition relevant to causation is quoted below:

> [Plaintiff's attorney]. In your expert opinion was the violation of the standard of care that you testified about here today a proximal contributing cause to [Decedent] developing bronchopneumonia?
>
> . . . .
>
> [Dr. Behrman]. Within my knowledge as an oral and maxillofacial surgeon, yes.

Plaintiff also alleged in the complaint that an "autopsy was performed, and the cause of death was determined to be bronchopneumonia following comprehensive dental care under general anesthesia." The doctor who performed the Decedent's autopsy, Dr. Gaffney-Kraft, stated in an affidavit filed by Plaintiff in this action that "it is [her] opinion within reasonable medical certainty that the cause of death of [the Decedent] was bronchopneumonia following comprehensive dental care including exam, radiographs, cleaning, restoration and extractions which were performed under general anesthesia shortly before his death[.]" Dr. Gaffney-Kraft also indicated in her report of autopsy examination that Decedent's cause of death was bronchopneumonia.

As stated above, the trial court should grant a motion for summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."  N.C.G.S. § 1A-1, Rule 56(c); *see also Lord*, 191 N.C. App. at 293, 664 S.E.2d at 334.  "Where there are genuine, conflicting issues of material fact, the motion for summary judgment must be denied so that such disputes may be properly resolved by the jury as the trier of fact."  *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 468, 597 S.E.2d 674, 692 (2004).

Plaintiff contends that she "presented a two-tier approach on causation."  First, Dr. Behrman opined that the violation of the standard of care caused the Decedent's bronchopneumonia; second, the bronchopneumonia caused the death of the Decedent. Defendants contend the testimony of Dr. Behrman fails to establish proximate cause because his testimony fails to satisfy N.C.G.S. §8C-1, Rule 702 (2009).[2]

---

[2] Our General Assembly amended N.C.G.S. § 8C-1, Rule 702 in 2011. 2011 N.C. Sess. Laws ch. 283 § 1.3.  The amendments apply "to actions commenced on or after" 1 October 2011.  *Id.* at § 4.2. The amendments are not applicable to the present case because the action was commenced on 13 July 2010.

## III. Admissibility of Expert Testimony

Despite the fact that this matter is before us on appeal from the grant of summary judgment, we address the admissibility of expert testimony because of our Supreme Court's analysis in *Crocker v. Roethling*, 363 N.C. 140, 675 S.E.2d 625 (2009). In *Howerton,* our Supreme Court recognized the differences in the two issues and commented that a party "will not likely fare as well" by moving for summary judgment without a preliminary admissibility determination "because of the inherent procedural safeguards favoring the non-moving party in motions for summary judgment." *Howerton*, 358 N.C. at 468, 597 S.E.2d at 692; *see also Day v. Brant*, ___ N.C. App. ___, ___, 721 S.E.2d 238, 247, *disc. review denied*, 366 N.C. 719, 726 S.E.2d 179 (2012) ("Our Supreme Court, in *Howerton*, cautioned against the merging of the two issues.").

The decision in *Crocker* was composed of three opinions from the Supreme Court. All three opinions analyze the admissibility of expert testimony, regardless of the facts that the appeal was from an order granting summary judgment and the record indicated no motion to exclude expert testimony. *Crocker*, 363 N.C. at 143, 675 S.E.2d at 629. Our Supreme Court concluded that the trial court's ruling on summary judgment resulted from "a misapplication of Rule 702[.]" *Id.* at 144, 675 S.E.2d at 629.

Because our Supreme Court in *Crocker* analyzed the admissibility of expert testimony even in the absence of a motion to exclude expert testimony, we analyze the admissibility of expert testimony in the present case.

"The trial court must decide the preliminary question of the admissibility of expert testimony under the three-step approach adopted in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995)." *Crocker*, 363 N.C. at 144, 675 S.E.2d at 629. "The trial court thereunder must assess: 1) the reliability of the expert's methodology, 2) the qualifications of the proposed expert, and 3) the relevance of the expert's testimony." *Id.*

### A. Reliability of the Expert's Methodology

As to the first step in the *Goode* analysis of the admissibility of expert testimony, Plaintiff contends that Dr. Behrman "is unquestionably qualified as an expert in the field of oral surgery." Defendants contend Plaintiff's expert testimony is "not sufficiently reliable to be admissible[,]" citing *Azar v. Presbyterian Hosp.*, 191 N.C. App. 367, 663 S.E.2d 450 (2008). When testimony on medical causation "is based merely upon speculation and conjecture, however, it is no different than a layman's opinion, and as such, is not sufficiently reliable to be considered competent evidence on issues of medical causation." *Id.* at 371, 663 S.E.2d at 453.

However, as discussed above, the opinions of Dr. Behrman and Dr. Gaffney-Kraft were not based merely upon speculation or conjecture. Neither Dr. Behrman nor Dr. Gaffney-Kraft used the words "probably" or "possibly" or otherwise indicated that their opinions were speculative or conjectural. Rather, Dr. Behrman answered the question as to his opinion on causation in the affirmative. Similarly, Dr. Gaffney-Kraft stated that "it is [her] opinion within reasonable medical certainty that the cause of death of [the Decedent] was bronchopneumonia[.]" The fact that Plaintiff's causation testimony is presented in two steps, (1) that the dental care caused Decedent's bronchopneumonia and (2) that the bronchopneumonia caused Decedent's death, does not affect this analysis. Defendants cite no case holding that causation evidence may not be presented in sequential steps, and our research reveals none. Defendants have not shown Plaintiff's expert testimony is not sufficiently reliable to be considered competent evidence on causation.

## B. Qualifications of the Proposed Expert

As to the second step in the *Goode* analysis of the admissibility of expert testimony, Plaintiff contends that, because Dr. Behrman is an oral surgeon who performs surgical operations on patients, and the practice of medicine includes surgery, "there is an overlap between" statutes regulating the

practice of medicine and the practice of dentistry. Defendants contend Plaintiff's experts "cannot be qualified to render expert opinions on medical causation pertaining to areas of the body outside the oral cavity."

Defendants cite *Martin v. Benson*, 125 N.C. App. 330, 481 S.E.2d 292 (1997), *rev'd on other grounds*, 348 N.C. 684, 500 S.E.2d 664 (1998), in support of their contention that only a medical doctor would be qualified to opine as to causation of bronchopneumonia. In *Martin*, this Court held the trial court erred in allowing a neuropsychologist to opine as to a closed head injury. *Id.* at 334-37, 481 S.E.2d at 294-96. However, our Supreme Court held that the plaintiffs waived the right to appellate review of the testimony because the plaintiffs failed to object to the evidence at the time it was offered at trial. *Martin*, 348 N.C. at 685, 500 S.E.2d at 665.

"If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion." N.C.G.S. § 8C-1, Rule 702(a). "[T]he opinion testimony of an expert witness is competent if there is evidence to show that, through study or experience, or both, the witness has acquired such skill that he

is better qualified than the jury to form an opinion on the particular subject of his testimony." *Terry v. PPG Indus., Inc.*, 156 N.C. App. 512, 518, 577 S.E.2d 326, 332 (2003) (licensed clinical psychologist was qualified to testify regarding the cause of depression).

This Court in *Martin* considered "Rule 702 in light of this State's statutes defining the practice of 'psychology.'" *Martin*, 125 N.C. App. at 336, 481 S.E.2d at 295. This Court noted that N.C. Gen. Stat. § 90-270.3 (1993) required licensed psychologists to assist clients in obtaining professional help for problems that fall outside the bounds of the psychologist's competence, including "the diagnosis and treatment of relevant medical" problems. *Id.* at 337, 481 S.E.2d at 296. From this statute, this Court concluded it was evident "that the practice of psychology does not include the diagnosis of medical causation." *Id.* By contrast, in the present case, no statute requires dentists to assist their clients in obtaining professional help for problems outside the boundaries of the dentist's competence. *Martin* is thus distinguishable from the present case.

"The essential question in determining the admissibility of opinion evidence is whether the witness, through study or experience, has acquired such skill that he was better qualified

than the jury to form an opinion on the subject matter to which his testimony applies." *Diggs*, 177 N.C. App. at 297, 628 S.E.2d at 856 (holding that a nurse qualified to opine as to causation of injury arising from gallbladder surgery).

Dr. Behrman earned a Doctor of Dental Medicine degree, completed an internship in anesthesia and a residency in oral and maxillofacial surgery, is licensed by the New York Board of Dentistry, and has been certified by the American Board of Oral and Maxillofacial Surgeons since 1986. As Chief of the Division of Dentistry, Oral and Maxillofacial Surgery since June 1996, Dr. Behrman oversees residency programs that provide over 10,000 patient visits each year. He is the Chair of the Institutional Review Board of a medical center in New York. In the past, he has held appointments with the University of Pennsylvania School of Dental Medicine and Memorial Sloan-Kettering Cancer Center and Hospital. Focusing on the qualifications of Dr. Behrman in particular, as opposed to the qualifications of licensed dentists in general, Dr. Behrman's knowledge, skill, experience, training, and education qualify him to opine as to the causation of bronchopneumonia. Dr. Behrman has "acquired such skill that he was better qualified than the jury to form an opinion" on the causation of bronchopneumonia. *Diggs*, 177 N.C. App. at 297, 628

S.E.2d at 856; *see also Terry*, 156 N.C. App. at 518, 577 S.E.2d at 332.

We note that Defendants do not challenge the qualification of Dr. Gaffney-Kraft to offer her expert opinion that bronchopneumonia was the Decedent's cause of death.

### C. Relevance of the Expert's Testimony

Defendants do not challenge the third step of the *Goode* analysis, namely, the relevance of the expert's testimony.

### IV. Conclusion

The depositions, affidavits, and pleadings show that Plaintiff, the nonmoving party, forecast evidence showing that Defendants' treatment proximately caused the Decedent's death and that there are genuine issues of material fact to be determined by the jury. The evidence constitutes a sufficient forecast of evidence for presentment of the case to the jury. The trial court erred in granting Defendants' motions for summary judgment relating to dental care.

Reversed.

Judge McCULLOUGH concurs.

Judge DILLON dissents with separate opinion.

LESLIE WEBB, Administratrix of the
Estate of ROBERT B. WEBB, III,
    Plaintiff-Appellant,

    v.

WAKE FOREST UNIVERSITY BAPTIST
MEDICAL CENTER, UNIVERSITY DENTAL
ASSOCIATES, NORTH CAROLINA BAPTIST
HOSPITAL, WAKE FOREST UNIVERSITY,
WAKE FOREST UNIVERSITY PHYSICIANS,
SHILPA S. BUSS, DDS, and REENA
PATEL, DDS,
    Defendants-Appellees.

Forsyth County
No. 10-CVS-1990

    DILLON, Judge, dissenting.

    At the summary judgment hearing below, Plaintiff relied on the opinions of two dentists – Dr. Thomas David and Dr. David Behrman – as her forecast of evidence to establish that (1) the provision of dental care by Defendants to Robert B. Webb, III, (Decedent) violated the standard of care for dental professionals; *and* that (2) this violation proximately caused Decedent to develop bronchopneumonia.[3]  Because I do not believe that the trial court abused its discretion under N.C. Gen. Stat.

---

[3] Plaintiff relied upon the opinion of a medical doctor that Decedent's bronchopneumonia caused his death.  However, this medical doctor never expressed an opinion as to the cause of the bronchopneumonia.

§ 8C-1, Rule 702 by excluding from its consideration the opinions of these dentists as to the cause of Decedent's bronchopneumonia, I respectfully dissent.

Here, Plaintiff bore the burden of producing a forecast of evidence demonstrating "(1) the applicable standard of care; (2) a breach of such standard of care by [Defendants]; (3) [that] the injuries suffered by [Decedent] were proximately caused by such breach; and (4) the damages resulting to [Decedent]." *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998). Our Supreme Court has held that "[w]here 'a layman can have no well-founded knowledge and can do no more than indulge in mere speculation (as to the cause of a physical condition), there is no proper foundation for a finding by the trier without expert medical testimony.'" *Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1964) (citations omitted).

The theory of Plaintiff's case, here, is that Defendants violated the standard of care applicable to licensed dentists, that this violation proximately caused Decedent to contract bronchopneumonia, and that Decedent's bronchopneumonia was the cause of his death. Defendants do not contend that Plaintiff's forecast of evidence regarding the applicable standard of care

and the breach thereof was insufficient to survive summary judgment. Indeed, Plaintiff's two dental experts each stated their opinions concerning the applicable standard of care for a licensed dentist in performing Decedent's dental procedure and, moreover, that Defendants had violated that standard.[4] Rather, Defendants argue - and the trial court concluded - that these same dentists did not qualify under Rule 702 to offer an expert opinion that the violation of the dental standard of care in this case was the proximate cause of Decedent's bronchopneumonia.

The parties do not dispute that Plaintiff's burden was to forecast evidence in the form of expert testimony to lay a proper foundation from which a jury could determine the cause of Decedent's bronchopneumonia. The admissibility of expert testimony on the issue of medical causation is governed by Rule 702(a) of our Rules of Evidence, the relevant version[5] of which provides that "[i]f scientific, technical or other specialized

---

[4] Likewise, Defendants do not contend that Plaintiff's forecast of evidence regarding the causal connection between Decedent's bronchopneumonia and his death was not sufficient to survive summary judgment, as this connection was established through the opinion of a medical doctor.

[5] Rule 702(a) was amended for actions commenced after October 1, 2011 to provide a stricter standard on the admissibility of expert testimony. *See State v. McGrady*, __ N.C. App. __, __ S.E.2d __ (2014).

knowledge will assist the trier of fact . . . to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion[.]"

In the context of a medical malpractice action, Rule 702(a) appears less restrictive as to the qualifications of a witness to provide an expert opinion on medical causation than Rule 702(b) as to the qualifications of a witness to provide an expert opinion on the appropriate standard of care. For instance, while an expert testifying as to the standard of care must generally be "a licensed health care provider," this Court has held, in a medical malpractice case, that a witness need not be a licensed medical doctor in order to offer an expert opinion as to medical causation, *Diggs v. Novant Health*, 177 N.C. App. 290, 628, S.E.2d 851 (2006), noting that our Supreme Court has rejected the notion that only a medical doctor can be qualified under Rule 702 to give an opinion regarding medical causation, *id.* (citing *State v. Tyler*, 346 N.C. 187, 203-04, 485 S.E.2d 599, 608 (1997)). Accordingly, I believe we are bound to conclude that Plaintiff's two dentist experts are not disqualified, as a matter of law, from offering opinions regarding Decedent's onset of bronchopneumonia.

While it is true that the trial court is "afforded 'wide latitude of discretion when making a determination about the admissibility of expert testimony[,]'" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citation omitted), I discern no abuse of discretion in the trial court's decision to exclude the opinion testimonies of Drs. David and Behrman concerning the cause of Decedent's bronchopneumonia in the present case. Although Dr. David opined that the standard care violation was the proximate cause of Decedent's bronchopneumonia, he also testified that he was not an expert qualified to offer an opinion as to the cause of Decedent's bronchopneumonia, specifically stating: "Again, I'm not an expert in that regard, so my only opinion would be as a health care practitioner and general knowledge in that realm, but I'm not going to offer an expert opinion."

Likewise, Dr. Behrman stated in response to a question from Plaintiff's counsel that it was his opinion that the standard of care violation caused Decedent's bronchopneumonia; however, he qualified his response in stating that his opinion was "[w]ithin [his] knowledge as an oral and maxillofacial surgeon" and that he "would defer [his] opinions related to the development of [Decedent's] bronchopneumonia to a medical doctor." Further Dr.

Behrman acknowledged that Decedent was a medically complex patient.

The majority cites the three-pronged analysis set out by our Supreme Court in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995), which the trial court must use in determining the preliminary issue of the admissibility of expert testimony. I disagree with the majority's conclusion with respect to the first prong of the analysis, that the methodology employed by Drs. David and Behrman in determining the cause of Decedent's bronchopneumonia was reliable. Plaintiff does not point to any testimony where either dentist discussed the methodology by which he determined the cause of Decedent's bronchopneumonia. Further, I disagree with the majority's conclusion regarding the second prong of the analysis, that Drs. David and Behrman were qualified to offer expert opinions as to the cause of Decedent's bronchopneumonia. Plaintiff does not point to any testimony indicating that either dentist possessed the requisite "knowledge, skill, experience, training or education" to state an opinion with any degree of certainty that it was Defendants' conduct that caused Decedent's bronchopneumonia. In other words, I do not believe that a trial court abuses its discretion as gatekeeper in excluding the opinion testimony of a witness

concerning the cause of bronchopneumonia in a patient with a complex medical history simply because the witness testified that he has worked in the health care profession and has extensive experience in dental surgery, but otherwise provided no testimony indicating that he has any expertise in determining the cause of bronchopneumonia. Accordingly, I would vote to affirm the trial court's decision to exclude this testimony.